## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNIFER SMITH-UTTER,<br><br>*Plaintiff*,<br><br>vs.<br><br>THE KROGER CO., d/b/a, DILLON STORES; CITY OF WICHITA, KANSAS; WICHITA POLICE DEPARTMENT; and UNKNOWN OFFICERS OF THE WICHITA POLICE DEPARTMENT<br><br>*Defendant.* | Case No. 07-1213-EFM |

## MEMORANDUM AND ORDER

Before the Court is Defendant Kroger Co.'s, d/b/a, Dillon Stores ("Dillons") Motion for Summary Judgment (Doc. 30). The motion has been fully briefed and is ripe for decision. (Docs. 39, 43). For the following reasons, the Court GRANTS the motion.

**I. Facts**

On Sunday, April 29, 2007, Plaintiff Jennifer Smith-Utter attempted to cash a check at Dillons located at Central and Rock Road. Dillons had recently started using a new check cashing system, Biometric, approximately one month earlier. Dillons' employees had to go through training before the new system was implemented. Before cashing a check through the Biometric system, a customer went through a one-time enrollment process. The customer would fill out an enrollment form, and the Dillons employee would then scan the check, along with the customer's fingerprint.

After the enrollment, there was a waiting period of seven to ten days. During the first few months of operation, Dillons waived the waiting period.

Jacob Smith was working in the customer service/checking department on April 29th. He was trained that he was supposed to call the Kroger Check Recovery Center ("KCRC") if a check was denied, rejected, or alerted. KCRC's hours are 9-5 weekdays, and they are closed on Sunday. Raquel Henry was working in the cash/count room, adjacent to the customer service area. Mr. Smith considered Ms. Henry to be his boss, and Ms. Henry was the person with the most authority at the store at the time of the incident. Ms. Henry was trained to notify someone in charge at the store level when a bad check came through the system.

On the evening of April 29th, Plaintiff presented a USD 259 payroll check made out to Jennifer Leigh Smith-Utter in the amount of $424.81. Plaintiff worked as a substitute teacher for USD 259. Mr. Smith had Plaintiff fill out an enrollment form. After Plaintiff completed enrollment, Mr. Smith attempted to cash the check by scanning it into the verification system. The code "SL" came up, and Mr. Smith looked up the code to see what it meant. It indicated "stolen or lost." When a check comes up with the code, "stolen or lost," Dillons cannot run the check through the system.

Mr. Smith took the print-out of the code, as well as the check, to Ms. Henry. Ms. Henry asked to see Plaintiff's driver's license and began to notice all of the things that were wrong. Plaintiff's driver's license indicated that her name was Jennifer Smith. The address on the check did not match the address on the driver's license. In addition, the check was postdated for the following day April 30, 2007, although Plaintiff presented the check on April 29.

After Ms. Henry verified the code and noticed everything that was wrong with the check, she called 911. At the time of the incident, the store manager was gone and the KCRC was closed.

Ms. Henry told the 911 operator that she was calling about a stolen check. Ms. Henry stated that the computerized system was new, and a code had come up that indicated the check was stolen. She also informed the 911 operator that the check was postdated and that the name and address on the check and driver's license did not match. Ms. Henry stated that Plaintiff "doesn't even look like the type" and asked "what if it's not her [Plaintiff's] fault?"

While Ms. Henry was calling the police, Mr. Smith told Plaintiff that they were verifying the check. Officer Travis Cox and Officer Jason Cooley were called to the Dillons on a forgery in progress. When they arrived at the store, Officer Cooley spoke with the Dillons' employees, and Officer Cox spoke with Plaintiff. Mr. Smith and Ms. Henry explained to the police why Dillons thought the check might be a bad check. They explained that the code indicated that the check was stolen or lost, and the names and addresses on the check and Plaintiff's driver's license did not match. They also stated that Dillons was using a new check cashing system.

Officer Cooley had contact with an individual employed at USD 259. This individual, Earl, had access to something that Officer Cooley assumed was a list of teachers. Earl could not verify whether or not Plaintiff was a USD 259 employee. Officer Cooley characterized Plaintiff's behavior during the investigation as "extremely fidgety, which is obviously going to raise our level of suspicion. I could tell she didn't want to answer his (Officer Cox's) questions like her name and stuff like that." Officer Cox's supervisor, Sergeant Stevens, instructed Officer Cox to arrest Plaintiff after Cox informed the Sergeant that the check came back lost or stolen, the officer could not verify that it was not, and that the check was post dated.

After Plaintiff's arrest, it was discovered that the check was not stolen or lost, and it was a properly issued check to the Plaintiff. Plaintiff filed suit against Dillons, the City of Wichita, the

Wichita Police Department, and unknown officers of the Wichita Police Department. This order addresses Plaintiff's claims as set forth in the pretrial order against Dillons.

### II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[1] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[2] A fact is "material" when "it is essential to the proper disposition of the claim."[3] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[4]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[5] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[6]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[7] The opposing party must "set forth specific facts that would be admissible in evidence in the event of

---

[1] Fed. R. Civ. P. 56(c).

[2] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[3] *Id.*

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[6] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[7] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

trial from which a rational trier of fact could find for the nonmovant."[8] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[9] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[10] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[11]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]

## III. Analysis[13]

### A. Defamation

---

[8]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[9]*Adler*, 144 F.3d at 671.

[10]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[11]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[12]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13]Defendant Dillons and Defendant City of Wichita filed separate motions for summary judgment on the same day. (Doc. 30 and Doc. 33 respectively). The claims asserted by Plaintiff against Dillons are state law claims while the claims asserted against the City are federal claims. District courts have supplemental jurisdiction over state law claims that are part of the "same case and controversy." 28 U.S.C. § 1367(a). As all the events in this case are based on the same set of facts, the state and federal claims arise out of the "same case or controversy." This Court has jurisdiction because Defendant City's motion for summary judgment is pending and is being addressed in the Court's contemporaneous order.

If the Court had already dismissed Defendant City's claims and the only claims remaining were state law claims against Dillons, the exercise of supplemental jurisdiction would be discretionary. 28 U.S.C. § 1441(c). "[T]hat discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). "A federal court justifiably may retain jurisdiction of the pendent claims when substantial time and energy have been expended on the case prior to the disposition of the federal claims." *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995)(citation omitted). When the state law is evolving, it is particularly appropriate for state courts to decide the issue. *See Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995). Here, the entire lawsuit proceeded in federal court, both parties have fully briefed their motions for summary judgment, and trial was set for March until it was recently postponed. In addition, the state law is clearly settled.

Under Kansas law, the elements of defamation are (1) false and defamatory words, (2) communicated to a third person, and (3) which results in harm to the reputation of the person defamed.[14] Truth and privilege are affirmative defenses to a claim of defamation.[15] Defendant asserts that it is entitled to summary judgment because there were no false or defamatory words, and there was no harm to Plaintiff's reputation.

Plaintiff first argues that Dillons failed to disclose pertinent, truthful information in their interactions with the police, calling this failure a sin of omission. Plaintiff then argues that Defendant defamed her because it gave false information to the Wichita police department that Plaintiff's check was stolen when in actuality, the check was not stolen. With regard to the "sins of omission," an essential element of defamation requires that false and defamatory words be ***communicated*** to a third person. Plaintiff's argument regarding Dillons' failure to disclose information must fail because failure to communicate is not an element of defamation.

"Damage to one's reputation is the essence and gravamen of an action for defamation."[16] Plaintiff must provide some evidence that Defendant's statements caused identifiable damage to her reputation.[17] "Proof of damages to reputation typically entails showing that persons were deterred from associating with plaintiff, that plaintiff's reputation has been lowered in the community, or that the plaintiff's profession suffered. Injury to plaintiff's own sensibilities is not enough to support a

---

[14]*Fisher v. Lynch*, 571 F. Supp. 2d 1230, 1233 (D. Kan. 2008)(*citing Hall v. Kan. Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495, 504 (2002)).

[15]*Gearhart v. Sears, Roebuck & Co.*, 27 F. Supp. 2d 1263, 1277 (D. Kan. 1998)(citing *Turner v. Halliburton Co.*, 240 Kan. 1, 7, 722 P.2d 1106, 1112 (1986)).

[16]*Gobin v. Globe Publ'g Co.*, 232 Kan. 1, 6, 649 P.2d 1239, 1243 (1982)*.*

[17]*Carraway v. Cracker Barrel Old Country Store, Inc.*, 2003 WL 21685909, at * 12 (D. Kan. 2003)(citing *Goblin*, 232 Kan. at 7, 649 P.2d at 1244)

defamation claim."[18] Speculation that a bystander witnessing a detention may have believed Plaintiff to be criminal is immaterial unless Plaintiff produces evidence that the bystander had personal knowledge of Plaintiff's reputation.[19] Summary judgment is appropriate if there is no evidence that there was damage to Plaintiff's reputation.[20]

Here, Plaintiff has provided no evidence of damages. Although Plaintiff states that she is too humiliated to approach an individual who goes to her church whom she states saw her arrest, she has not shown that he was deterred from associating with her or that his opinion of her changed. She has not provided any evidence that her reputation was lowered in the community. In addition, with regard to the USD 259 employee, Plaintiff has presented no evidence that this individual had or has knowledge of Plaintiff's reputation. She has not provided any evidence that her profession suffered. Plaintiff's unsupported allegations are insufficient to demonstrate that her reputation was harmed. As such, Plaintiff has failed to establish an essential element of her defamation claim.

Furthermore, Defendant claims that the information it gave the police was truthful. Here, the information the Dillons' employees had in front of them included the fact that their check verification machine indicated that the check was stolen or lost, Plaintiff's name and address on her driver's license did not match the name and driver's license on the check she presented, and the check was postdated. Everything the Dillons' employee told the police was truthful.[21] "Truth is a

---

[18]*Hunter v. The Buckle, Inc.*, 488 F. Supp. 2d 1157, 1178 (D. Kan. 2007)(citations omitted).

[19]*Id.*

[20]*Hall*, 274 Kan. at 278, 50 P.3d at 505.

[21]The fact that the check was not stolen does not change the fact that what the Dillons' employees told the police was truthful. Although Ms. Henry initially stated she was calling about a "stolen check," she also stated that the new system indicated that the check was lost or stolen, the address and name on the driver's license did not match the check, and the check was postdated. Multiple things indicated that the check appeared to be stolen, and this is the information that Dillons gave the police.

complete defense" to a defamation claim.[22]

Defendant also asserts the affirmative defense that the information provided to the police was qualifiedly privileged.[23] "A qualified or limited privilege is granted to those with a special interest or duty in the subject matter of the communication."[24] Communication about matters regarding the commission of a crime is qualifiedly privileged."[25]

The elements necessary to a claim of qualified privilege include: good faith, an interest to be upheld, a statement limited in its scope to uphold its purpose, and publication in a proper manner to proper parties.[26] Plaintiff asserts the privilege does not apply because she contends that Dillons could have protected its money by sending Plaintiff on her way. In addition, Plaintiff contends that the employees were trained to call the KCRC first to verify the reason for the coding of the check. By calling the police, Plaintiff contends that the Dillons' employees went beyond the scope of their duties, and it was an unnecessary step to protect its interest.

There is, however, a matter of public concern in determining whether a crime is being committed. In addition, the step that Plaintiff contends Defendant should have taken first, calling

---

[22]*Ali v. Douglas Cable Commun's*, 929 F. Supp. 1362, 1384 (D. Kan. 1996)(citing *High v. A.J. Hawri Hardware Co.*, 115 Kan. 400, 405, 223 P. 264 (1924)).

[23]Qualified privilege is an affirmative defense. *Turner*, 240 Kan. at 7, 722 P.2d at 1112. Plaintiff contends that Defendant failed to plead this defense in its answer and the pretrial order and is therefore unable to assert it for the first time in its motion for summary judgment. The Court notes that it does not even appear that Plaintiff alleged defamation in her petition. However, in the pretrial order, it was listed as a claim against Defendant Dillons. Defendant stated as a defense or affirmative defense in the pretrial order that "as a merchant, [it] is entitled to take action when it believes a crime has been or is being committed. This includes the right to summon law enforcement authorities to investigate whether a crime has been or is being committed." Doc. 29, p. 10, ¶ 2(c). Although Defendant did not use the words "qualified privilege," it did assert it as an affirmative defense. As such, Defendant can raise it in its motion for summary judgment.

[24]*Turner*, 240 Kan. at 7, 722 P.2d at 1112.

[25]*See, e.g., Turner*, 240 Kan. at 11, 722 P.2d at 1115.

[26]*Knudsen v. Kansas Gas & Elec. Co.*, 248 Kan. 469, 480, 807 P.2d 71, 79 (1991).

the KCRC, was unavailable as it was closed on Sunday. As stated above, Defendant provided the information to the police that was in front of them. Dillons' employees made this communication to the police department for the purpose of the police determining whether the check was stolen. It was given in good faith to the proper parties and for the limited purpose of having the police come to the store to determine if a crime, i.e, a forgery was in progress. Accordingly, Defendant is entitled to a qualified privilege.

Where there is a qualified privilege, the plaintiff must demonstrate not only that the statements were false, but that the statements were made with actual malice.[27] "[P]roof of malice in defamation actions when a qualified privilege is found to exist requires a plaintiff to prove that the publication was made with knowledge that the defamatory statement was false or with reckless disregard of whether it was false."[28] Plaintiff contends that Dillons acted in reckless disregard for the truth because Dillons' employees were not trained what do in the event the KCRC was closed, and they reported the check in spite of their belief that plaintiff did "not look the type." The fact that Defendant communicated their belief to the police that Plaintiff "did not look the type" and also asked "what if it's not her fault" indicates that the Defendant was not acting in reckless disregard to the truth. Instead, Defendant was being cautious and communicated the facts and circumstances known to them. Accordingly, Plaintiff cannot establish that Defendant acted with actual malice.

Plaintiff has failed to produce sufficient evidence with regard to damages or that Defendant acted with actual malice. As such, Defendant is entitled to summary judgment on Plaintiff's defamation claim.

---

[27]*Turner*, 240 Kan. at 8, 722 P.2d at 1113.

[28]*Smith v. Farha*, 266 Kan. 991, 997, 974 P.2d 563, 568 (1999).

**B. Invasion of Privacy**

Plaintiff alleges two different theories of invasion of privacy. Plaintiff asserts false light invasion of privacy and intrusion upon seclusion invasion of privacy.

The elements of false light invasion of privacy are: "(1) publication of some kind must be made to a third party; (2) the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person."[29] "Publicity" with regard to a false light claim "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."[30]

Here, Plaintiff has presented no evidence demonstrating widespread disclosure of private matters. Although Plaintiff contends that there were *potentially* dozens of people who were at Dillons that could draw conclusions about what was going on, the undisputed facts demonstrate that Defendant only made the information "public" to several police officers. A communication to a small group of persons is not an invasion of privacy. In addition, even if dozens of people did see the arrest, this is still not considered widespread disclosure.[31] There are no facts indicating that there was widespread disclosure of Plaintiff's arrest. As such, Plaintiff cannot establish essential elements of her invasion of privacy claim.

Furthermore, "[d]efamation and false light/invasion of privacy claims are treated similarly

---

[29]*Dominguez v. Davidson*, 266 Kan. 926, 937, 974 P.2d 112, 121 (1999)(citing *Castleberry v. Boeing Co.*, 880 F.Supp. 1435, 1442 (D. Kan. 1995)).

[30]Restatement (Second) Torts § 652E cmt. a (1977)(stating that the "publicity" definition in § 652D cmt. a is also applicable to § 652E).

[31]*Hunter*, 488 F. Supp. 2d at 1180(stating that the fact that twenty customers saw plaintiffs' handcuffed and "paraded" out of a store did not constitute widespread communication).

by the courts, and truth and privilege are defenses available in both causes of action."[32]  As discussed above, the Court finds that Defendant's statements were truthful and subject to a qualified privilege. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for false light invasion of privacy.

There are two elements that must be proven for intrusion upon seclusion (1) an intentional interference in the solitude or seclusion of a person's physical being, or prying into his private affairs or concerns, and (2) the intrusion would be highly offensive to a reasonable person.[33]  "While liability for the intrusion does not require publication of a plaintiff's private affairs, it does require that the defendant place himself physically, or by means of his senses, within plaintiff's zone of privacy."[34]  "Generally, the tort of intrusion upon seclusion is based upon the manner in which an individual obtains information."[35] "The intrusion itself makes the defendant subject to liability even though there is no publication or other use of any kind . . . ."[36]

With regard to an intrusion upon seclusion claim, the pertinent question is whether the defendant intentionally interfered or placed itself into plaintiff's private affairs.  Here, Plaintiff brought her check into Dillons to be cashed.  She voluntarily gave the check and her driver's license to the Dillons' employees. As such, the manner in which Defendant obtained information was not intrusive.  Defendant is entitled to summary judgment on Plaintiff's intrusion upon seclusion

---

[32]*Lloyd v. Quorum Health Res., L.L.C.*, 31 Kan. App. 2d 943, 954, 77 P.3d 993, 1002 (Kan. App. 2003)(citation omitted).

[33]*Werner v. Kliewer*, 238 Kan. 289, 294, 710 P.2d 1250, 1255 (1985)(relying on Restatement (Second) of Torts § 652B (1977)).

[34]*Finlay v. Finlay*, 18 Kan. App. 2d 479, 486-87, 856 P.2d 183, 190 (Kan. App. 1983).

[35]*Werner*, 238 Kan. at 294, 710 P.2d at 1255.

[36]Restatement (Second) Torts § 652B cmt. b.

-11-

invasion of privacy claim.

### C. False Arrest

False arrest "is the restraint of the personal freedom of an individual without legal excuse by any words, acts, threats, or personal violence that under the circumstances the one being restrained fears to disregard."[37] "False arrest" and "false imprisonment" are defined the same in Kansas.[38] Plaintiff argues that the key issue is whether Dillons contributed to her arrest by the Wichita police department.

"[T]he mere giving of information to a peace officer tending to show that a crime has been committed is not enough to render the informer guilty of resulting false imprisonment by the officer."[39] "[I]n the absence of an express request for the detention of another, a private citizen will not be found to have instigated an arrest, where his or her actions were reasonable in light of the facts known or readily available at the time."[40] "Liability will not be found where the private citizen neither encouraged nor commanded the police to make the arrest, and there is no suggestion of malice of bad faith on the citizen's part."[41]

Here, the facts demonstrate that Defendant Dillons passed on information to the Wichita police department. The information in front of the Dillons' employees included that the check verification system indicated that the check was stolen or lost, the name and address on Plaintiff's

---

[37] *Mendoza v. Reno County*, 235 Kan. 692, 695, 681 P.2d 676, 678 (1984).

[38] *Crutcher v. Coleman*, 2003 WL 21077433, at *5 (D. Kan. 2003)(citation omitted).

[39] *Thurman v. Cundiff*, 2 Kan. App. 2d 406, 410, 580 P.2d 893, 898 (Kan. App. 1978).

[40] 32 Am Jur. 2d False Imprisonment § 41.

[41] *Id.*

driver's license did not match the information on Plaintiff's check, and the check was postdated for the following day.

There is no evidence that Defendant encouraged the police to make the arrest. In fact, there is evidence that the Dillons' employee who made the call to the police expressed doubts about calling the police, stating that Plaintiff "doesn't even look like the type." and asked the 911 operator "what if it's not her [Plaintiff's] fault?" There is no suggestion of bad faith on the part of Defendant, and Defendant's actions were reasonable in the light of the facts known at the time. Accordingly, Defendant did not contribute to Plaintiff's arrest and is entitled to summary judgment on this claim.

### D. Negligent Misrepresentation

Plaintiff's final claim is negligent misrepresentation. Kansas recognizes the tort of negligent misrepresentation and has adopted the definition from the Restatement (Second) of Torts § 552 (1977).[42] Those elements include:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created,

---

[42]*See Mahler v. Keenan Real Estate Inc.*, 255 Kan. 593, 604, 876 P.2d 609, 616 (1994).

in any of the transactions in which it is intended to protect them.[43]

Nothing in these elements is applicable to the facts of this case.  There is no evidence that Dillons made any representations to Plaintiff or provided any guidance, let alone false guidance, in a business transaction.  There is no evidence that Plaintiff relied on any misrepresentations made by Dillons because there were no misrepresentations made. Plaintiff's claim is entirely without merit. As such, Defendant is entitled to summary judgment on this claim.

**IT IS ACCORDINGLY ORDERED** this 24th day of March, 2009 that (Doc. 30) is hereby GRANTED.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[43] *Id.*